**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 25, 2025**

# In the Court of Appeals of Georgia

A24A1246. TAYLOR v. ARGOS, USA et al.

DAVIS, Judge.

In this workers' compensation dispute, John Taylor appeals from the Appellate Division of the State Board of Workers' Compensation's ("the Board") decision denying his claim for temporary total disability ("TTD") payments. On appeal, Taylor argues that the Board erred by (1) concluding that he was not justified in his refusal to return to work because of his underlying health issues during the COVID-19 pandemic; (2) failing to find that his employer was required to commence TTD payments after his light duty employment ended; and (3) determining that he was not entitled to TTD payments after his termination despite his employer's refusal to offer a light duty job and his willingness to return to work. Because we conclude that the

Board's decision was based on an erroneous theory of law, we reverse the superior court's affirmance of the Board's decision with direction that the case be remanded to the Board for further proceedings.[1]

> In reviewing a workers' compensation award, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division of the State Board of Workers' Compensation. If any evidence supports the appellate division's findings, those findings are binding and conclusive, and neither this Court nor the superior court may substitute itself as the fact finding body. However, erroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to the de novo standard of review.

(Citations and punctuation omitted.) *Heaton Erecting, Inc. v. Gierum*, 370 Ga. App. 578, 579 (898 SE2d 590) (2024).

So viewed, the record shows that Taylor, who was employed as a truck driver with Argos, USA ("Argos") for more than 30 years, sustained injuries in a traffic accident that arose out of the course and scope of his employment on September 4, 2019. Argos accepted the claim as compensable as a "medical only claim," and it

---

[1] We thank the Georgia Legal Foundation for its thoughtful and helpful amicus brief in this matter.

began to issue temporary partial disability ("TPD") benefits to Taylor on September 9, 2019. Taylor was out of work from September 5, 2019, to September 8, 2019, and he returned to Argos on light duty work restrictions until September 13, 2019. Argos then sent Taylor to a non-profit organization, Arms Wide Open, to do light duty work, and he worked 40 hours per week at that location.[2] Taylor worked at Arms Wide Open until it closed on March 15, 2020.[3]

On April 14 and April 16, 2020, Argos' counsel emailed Taylor's counsel and informed her that a light duty job was available for Taylor at its facility. Taylor's counsel responded on April 16, 2020, stating that Taylor had diabetes, was "really scared" of COVID-19, and wanted to make sure that Argos was taking the necessary precautions for the safety of workers because he was "high risk." Argos replied and stated: "The company is taking all the necessary precautions to allow their employees to [return to work] safely. Let me know when [Taylor] is going to return."

On May 19, 2020, Argos' counsel sent another email to Taylor's counsel which stated: "[M]y clients are still looking at this regarding resolution. However, there is

---

[2] Argos routinely sends its employees to other locations when light duty work is not available.

[3] Taylor continued to receive TPD benefits.

light work available and they are putting him on the schedule immediately and were contacting him. Let me know if your client is willing to return to work pending our settlement[.]" That same day, Taylor's counsel responded: "Mr. Taylor is high risk and has to shelter in place. He is a diabetic and he is 67 [years old] along with being an African American. He cannot return to work regardless of light duty." Two days later, Argos terminated Taylor for "job abandonment."

Taylor subsequently filed a claim for TTD benefits with the Workers' Compensation Board. At the hearing on Taylor's claim, the evidence conflicted as to whether Taylor knew about Argos' light duty job offer and whether he stopped working due to the pandemic. Specifically, Taylor testified that his doctor told him about Argos' light duty job offer, but he also testified that his counsel did not inform him about the job offer and that he did not know that his counsel told Argos that he could not return to work due to the pandemic. As to whether Taylor stopped working due to the pandemic, Taylor initially testified that he did not quarantine in March 2020 but that he was "ill" and "in pain," which kept him from working. Taylor acknowledged, however, that in a prior deposition that he testified that he had stopped

working at Arms Wide Open because he "had to quarantine."[4] Taylor also testified that he would have returned to work during the pandemic had he known about Argos' light duty job offer.

Following the hearing, the Administrative Law Judge (ALJ) awarded Taylor continuing TTD benefits effective from March 16, 2020. Specifically, the ALJ first found that the responses of Taylor's counsel were attributed to Taylor. The ALJ then found that light duty work was provided for Taylor with Argos shortly after his injury and then at Arms Wide Open until it closed on March 15, 2020. The ALJ determined that after Arms Wide Open Wide closed, Taylor was entitled to TTD benefits as of March 16, 2020, because no light duty job was made available to him. The ALJ further determined that although Argos notified Taylor of a light duty job in April 2020, Taylor's concerns about the safety of the workplace in light of the COVID-19 pandemic were reasonable due to his underlying health conditions, Argos did not respond to Taylor's counsel regarding the safety precautions the company would put in place, and Taylor was justified in declining to return to work immediately until his concerns were addressed. Additionally, the ALJ found that even if Taylor was not

---

[4] There was also some testimony that Arms Wide Open closed at the same time due to the pandemic.

justified in his refusal to return to work, Taylor would have been entitled to TTD benefits from the date of his termination because there was no light duty work for him to refuse.

Argos and its insurance carrier, the appellees in this matter, sought review before the Board, and the Board adopted in part and reversed in part the findings of fact and the conclusions of law of the ALJ. Specifically, the Board did not disturb the ALJ's finding that the responses of Taylor's counsel were attributable to Taylor. The Board also affirmed the ALJ's finding that Argos and Arms Wide Open provided light duty work for Taylor within his restrictions and that Argos should have commenced the payment of TTD benefits to Taylor after Arms Wide Open closed. The Board found, however, that Taylor was not justified in refusing the light duty job Argos offered on May 19, 2020. Specifically, the Board concluded as follows:

> We cannot agree that [Taylor] was justified in refusing to return to work irrespective of any light-duty job offer, for reasons unrelated to the light-duty work restrictions imposed or the nature of his compensable injury. The preponderance of competent, credible evidence shows that [Taylor's] individual health and safety concerns during the pandemic were personal to [Taylor] and unrelated to his compensable work injury.

The Board also concluded that Taylor was not entitled to ongoing TTD benefits after he was terminated because he was terminated for cause and for reasons unrelated to his injury, and he was therefore required to show that he made an effort to secure other employment, but he failed to do so. Therefore, the Board awarded Taylor TTD benefits only from March 16 until May 19, 2020, and it vacated the award for continuing TTD benefits after May 19, 2020. Taylor sought review of the Board's decision in DeKalb County Superior Court, and the Board's decision was affirmed by operation of law. We granted Taylor's application for a discretionary appeal, and this appeal followed.[5]

1. First, Taylor argues that the Board erred in its determination that he was unjustified in his refusal to return to work on the basis that his refusal was unrelated to his work injury. We agree that the Board erred in its determination that Taylor was not entitled to TTD benefits on this basis.

TTD benefits are generally available to injured workers pursuant to OCGA § 34-9-261. OCGA § 34-9-240 (a) provides, however, that "[i]f an injured employee

---

[5] Oral argument was held in this matter on October 4, 2024, with Judge M. Yvette Miller presiding, just prior to her retirement. Judge Davis, who succeeded Presiding Judge Miller, reviewed the video archive of this oral argument.

refuses employment procured for him or her and suitable to his or her capacity, such employee shall not be entitled to any compensation, except benefits pursuant to Code Section 34-9-263,[6] at any time during the continuance of such refusal unless in the opinion of the board such refusal was justified." In construing OCGA § 34-9-240 (a), we have been clear that

> [t]he test of [the statute] is two-pronged. The Board must first determine whether the employment offered by the employer and refused by the employee is suitable to the capacity of the employee. If the Board finds that the proffered employment is suitable within the meaning of the statute, the employee is not entitled to compensation during the continuance of his refusal to work unless in the opinion of the Board such refusal was justified.

(Citation and punctuation omitted.) *Brasher v. U.S. Xpress Enterprises, Inc.*, 328 Ga. App. 20, 24 (2) (761 SE2d 448) (2014). In this case, Taylor does not dispute the Board's finding that Argos offered him suitable work in May 2020. Therefore, we focus our analysis on the second prong, which is whether Taylor was justified in his refusal to return to work.

---

[6] This statute governs compensation for permanent partial disability.

8

> The discretion afforded the [B]oard under OCGA § 34-9-240 to determine that an employee's refusal of proffered work is justified must relate to the physical capacity of the employee to perform the job; the employee's ability or skill to perform the job; or factors such as geographic relocation or travel conditions which would disrupt the employee's life. An employee's refusal to accept employment must relate, in some manner, to [his] physical capacity or [his] ability to perform the job in order for [his] refusal to be justified within the meaning of OCGA § 34-9-240.

(Citations and punctuation omitted.) *Wal-Mart Stores, Inc.*, *v. Harris*, 234 Ga. App. 401, 402 (506 SE2d 908) (1998).

In light of the principles above, we conclude that the Board erred in its determination that Taylor was not justified in refusing light duty employment. Specifically, the Board determined that Taylor was not justified in refusing the light duty job because his "individual health and safety concerns during the pandemic were personal to [him] and unrelated to his compensable work injury." But as stated above, for a refusal to be justified, it must "relate to the physical capacity of the employee to perform the job; the employee's ability or skill to perform the job; or factors such as geographic relocation or travel conditions which would disrupt the employee's life." (Citation omitted.) *Wal-Mart Stores, Inc.*, supra, 234 Ga. App. at 402. Simply put,

9

there is no requirement that an employee's refusal to return to work correlate to the work injury in order for the employee to be justified in refusing under OCGA § 34-9-240 (a). See, e.g., *City of Adel v. Wise*, 261 Ga. 53, 55-56 (401 SE2d 522) (1991) (providing examples of justifiable refusals to return to work, all of which do not relate to the work injury, including: a nurse who refuses a typing job because she lacks the skills to perform it, and a refusal to accept work that requires relocation from the employee's home); see also *Howard v. Scott Housing Sys., Inc.*, 180 Ga. App. 690, 691-692 (2) (350 SE2d 27) (1986) (employee was justified in refusing employment due to his incarceration pending adjudication of guilt); *Clark v. Ga. Kraft Co.*, 178 Ga. App. 884, 886 (345 SE2d 61) (1986) (employee was justified in refusing light duty employment which required him to spend time in parts of the plant that were not air-conditioned and impacted his ability to work, and which offered no opportunity for advancement). Consequently, because it affirmatively appears that the Board's decision was based upon an erroneous theory of law, "the judgment of the superior court affirming the decision of the Board is reversed with direction that the case be remanded to the Board for action in accordance with what is stated in this opinion." (Citation and punctuation omitted.) *Lilienthal v. Jlk, Inc.*, 367 Ga. App. 721, 726 (888

SE2d 310) (2023) (reversing the superior court's order with direction that the case be remanded to the Board where the Board's determination was based on an erroneous legal theory).

Furthermore, on remand, we direct that the Board make a specific factual finding as to the reason Taylor failed to return to work after Argos made its light duty job offer (specifically, an express finding that his failure to accept Argos' job offer was a result of his concerns about COVID-19, a result of his attorney's failure to relay Argos' job offer to him, or a result of some other reason) and that the Board then apply the correct legal standard as outlined in this opinion to conclude whether or not Taylor's reason for failing to return to work in response to Argos' job offer was justified. See *Lilienthal*, supra, 367 Ga. App. at 726. We leave to the Board's discretion whether it wishes to remand the matter back to the ALJ for further hearing on this issue. See OCGA § 34-9-103 (a) (the Board has the discretion to "remand to an administrative law judge in the trial division any case before it for the purpose of reconsideration and issuance of a new award, with or without the taking of additional evidence for consideration by the appellate division in rendering any decision or award in the case.").

2. Taylor further argues that the Board erred by failing to find that the appellees would have been required to file a WC-2 form in order to suspend his benefits if TTD payments had timely commenced and that he was entitled to TTD benefits after his termination because he was willing to return to work but Argos refused to offer any light duty work. In light of our holding in Division 1, it is unnecessary for us to address these claims of error.

*Judgment reversed and case remanded. Markle and Land, JJ., concur.*